WILLIAM O. WELLINGTON & another *vs.* LUCIE A. RAWSON & others.

Worcester.    September 30, 1918. — October 14, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Aqueduct. Water Rights. Equity Jurisdiction,* To enjoin interference with private aqueduct. *Equity Pleading and Practice,* Mandatory injunction.

The owner of an easement to draw water from a spring on the land of another by means of a private aqueduct pipe leading from the spring through the land of a third person to a supply tank or distributor on his own land may maintain a bill in equity to enjoin a defendant from cutting the aqueduct pipe on the land of the third person and diverting the water from the spring to the defendant's land; and in such a suit it is not necessary to allege or to prove that the plaintiff was in actual possession of the land to which such easement was appurtenant when such cutting and diverting were committed; nor is it necessary to allege or prove that the plaintiff suffered actual damage by the wrongful acts of the defendant, legal damage being presumed from the infringement of the plaintiff's right.

In the suit above described it appeared that the aqueduct right was created by an instrument signed by three persons, "each one to have an equal share of the water as the nature of the thing will admitt," and that the instrument contained a restriction prohibiting a disposal of the water to any other person "but by the consent of all three of said proprietors." A master who heard the case found, on evidence warranting such a finding, that the restriction upon the sale of the

water was waived by mutual consent. *Held*, that, in the absence of a report of all the evidence, this finding must stand.

In the case above described the final decree ordered the defendant who had cut the aqueduct pipe to replace the pipe and restore it to the condition it was in at the time of the trespass and enjoined perpetually that and another defendant from interfering with the plaintiff's rights in the water. *Held*, that, on the facts found by the master, the plaintiff was entitled to a mandatory injunction and that the final decree was proper.

BILL IN EQUITY, filed in the Superior Court on July 31, 1917, by the owners of a parcel of land with the buildings thereon in Oxford on the road leading from Oxford to Charlton, which formerly belonged to Willis M. Wellington, the plaintiffs being the widow and son of Willis M. Wellington and owning the land as tenants in common.

The bill alleged that the premises came to Willis M. Wellington through successive deeds from one Sterns Witt, that the defendant Lucie A. Rawson was the owner of a tract of land in Oxford with the buildings thereon, which formerly belonged to one Richard Olney, that by an agreement recorded in the registry of deeds, dated October 15, 1824, between Richard Olney, Jonathan Davis and Sterns Witt, Richard Olney granted to Sterns Witt certain water rights or aqueduct rights now appurtenant to the plaintiffs' land, consisting of a spring on the land formerly of Richard Olney, now of the defendant Lucie A. Rawson, a pipe leading therefrom and a supply or distributing tank, called a distributor, in a building on the land of the plaintiffs, that later in the summer of 1916 the defendants, or one of them, cut off the supply pipe leading from the spring to the distributor and connected the supply pipe with the land occupied by the defendant Carroll H. Rawson and that thereafter no water came to the distributor. The prayers of the bill were, first, "that the defendants, their servants and agents, be perpetually enjoined from interfering with the supply pipe running from the springs to the distributor, and from interfering with the flow of water from the springs to the distributor as provided in the agreement of the proprietors," second, "that the defendant Lucie A. Rawson be ordered to repair the supply pipe so that it will be in as good order and condition as it was in before it was interfered with and cut off, and so that it will supply water from the springs to the distributor," and, third, for further relief.

The case was referred to a master who filed a report containing the findings which are described in the opinion. The defendants filed exceptions to the master's report founded on six objections. The sixth was not argued and was treated by this court as waived. The other objections on which the exceptions were founded were as follows:

"1. For that the master was not warranted in finding that the right to the water was appurtenant to the Wellington premises, unless he also found that any right to the water that might be appurtenant to the Wellington premises was subject to all the reservations mentioned in the original agreement, and referred to in the deed from Warner to Wellington.

"2. For that the master was not warranted in finding that Jonathan Davis and Sterns Witt (who were the parties together with Richard Olney in said original agreement), and their legal representatives or successors in title, waived the reservation in said original agreement requiring their consent to the disposal of the water, by the fact that on one occasion said Davis and said Witt were parties to a conveyance of certain rights to Sibley and Barton, said Sibley and Barton not being in any sense predecessors in title of the plaintiffs as appears from the chain of title from Olney to Wellington as the same is recited in the report.

"3. For that the master failed to find that the plaintiffs' right to the water was subject to all the reservations, liabilities and incumbrances mentioned in the original agreement of Olney, Davis and Witt.

"4. For that the plaintiffs' right to the water being based upon the original agreement entered into by Olney, Davis and Witt, the master was not warranted in finding that the reservation in said original agreement requiring the consent of Jonathan Davis and Sterns Witt, or their legal representatives, to the disposal of the water, 'by mutual consent was waived,' it being stipulated in the master's report that the deeds upon which this finding is based 'are hereinbefore reported.'

"5. For that the master was not warranted in finding upon the deeds set forth in the report (and upon which deeds the master bases his said finding) that the plaintiffs had or have any right to the water."

The exceptions were heard by *J. F. Brown,* J., who made an

interlocutory decree overruling the exceptions and confirming the master's report. Later the judge made a final decree ordering, (1) that against the defendant Lucie A. Rawson the bill be dismissed, (2) that the defendant Carroll H. Rawson "forthwith, at his own expense, replace and restore the water pipe so that it will be in as good condition as it was at the time he cut the supply pipe," (3) perpetually enjoining the defendants Charles I. Rawson and Carroll H. Rawson from interfering in any way with the plaintiffs' water rights described in the bill, and (4) allowing to the plaintiffs costs taxed in the sum of $35. The defendants appealed.

The whole of the instrument creating the plaintiffs' easement, omitting the signatures, was as follows:

"Articles of Agreement made this fifteenth day of October, in the year of our Lord eighteen hundred and twenty-four By and between Richard Olney, Esquire, Jonathan Davis, Esqr. and Sterns Witt, Gentleman and all of Oxford, in the County of Worcester, witnesses. That whareas the said Olney Davis and Witt are about to make an Aqueduct to convey the water to their respective buildings on said Oxford plan, the spring or source of said aqueduct being on Land of said Olney and the trench for which also the aqueduct is to pass is through said Olney's land mostly, now therefore the said Richard Olney for himself, his heirs, Executors and Administrators covenents with the said Davis and Witt, their heirs, exr. & Admr that said Davis & Witt shall have an equal right in said aqueduct with himself that is to say, the said Olney to be at one third part of the expense, and the said Davis & Witt to be at one third part each and the said aqueduct to be owned by said Olney, Davis & Witt in three equal shares, each one to have an equal share of the water as the nature of the thing will admitt; and is further agreed by the parties aforesaid that in all future repairs of said aqueduct it shall be at the equal expense of the parties aforesaid whenever two out of the three shall think best, but that no disposal of the water shall ever be made to any other person, but by the consent of all three of said proprietors or their legall representives.

"And the said Olney further agrees with the said Davis & Witt that whereas there is another spring of water a little southerly of the head of said aqueduct which may be let into the one aforesaid

with little expense, that should it ever be thought necessary by the parties aforesaid to conduct the water from said spring into said aqueduct the said Davis & Witt are to have an equal right with said Olney to the same, they being at two thirds parts of the expense. For the fulfilment of the foregoing agreement we severally bind ourselves each to the other in the penal sum of one thousand dollars.

"In witness whereof, we have hereunto set our hands and seals the day and year above written."

*E. J. McMahon,* for the defendants.

*M. N. Pilsworth,* for the plaintiffs.

CARROLL, J. In 1824 Richard Olney was the owner of the Campbell farm, so called, in Oxford, Worcester County. On October 15 of that year he entered into an agreement under seal, with Jonathan Davis and Sterns Witt, to build an aqueduct to carry water from certain springs on the Campbell farm to their respective buildings, "the spring or source of said aqueduct being on Land of said Olney and the trench for which also the aqueduct is to pass is through said Olney's land mostly." All the parties to the agreement were to have equal rights in the aqueduct, "each one to have an equal share of the water as the nature of the thing will admitt." Each was to pay one third of the expense of construction "but that no disposal of the water . . . [should] ever be made to any other person, but by the consent of all three of said proprietors or their legall representives." In 1825 Olney conveyed the farm to Benjamin F. Town and Andrew Sigourney, Jr., together with "all the privileges and appurtenances thereto belonging including all the privileges I have in the aqueduct lattelly laid in said farm," reserving to Davis and Witt their rights under the agreement of October 15, 1824. By deed of December 6, 1825, Town, Sigourney, Davis and Witt conveyed to Sibley and Barton the right to draw water from the aqueduct for "their respective tenements."

By mesne conveyance the plaintiffs became the owners of the land of Sterns Witt; and the master found that the aqueduct has supplied water to the premises for more than sixty years and has been considered as an appurtenance thereto. In 1880, when the land was purchased by Willis M. Wellington, now deceased, there was a pipe leading "from said springs on Camp Hill to a

distributor located in the house of said Wellington from which radiated ten pipes, one going to the house and one to the barn of said Wellington, and the other eight were attached to pipes leading to other houses in the village of Oxford." The plaintiffs are the widow and son of Willis M. Wellington.

The master found that Carroll H. Rawson, one of the defendants, entered the land of one Verry, through which land the aqueduct ran, cut the pipe so that the water could not flow to the distributor, then attached a pipe leading to the house occupied by Rawson; and when William O. Wellington, one of the plaintiffs, entered the Verry land for the purpose of repairing the pipe, Charles I. Rawson under threats of personal violence prevented him from making the repairs. There was a decree for the plaintiffs.

The first contention of the defendants is that the bill does not state a case for equitable relief because there is no allegation of damages, and it is not stated that the plaintiffs were in possession of the premises. Assuming the question is now open, the bill alleges that the plaintiffs are the owners of the premises, formerly owned by Sterns Witt, to which the water rights are appurtenant. It is sufficiently alleged that the water came from a spring to the distributor located in the plaintiffs' building, and that the plaintiffs received their water supply from this distributor; that the pipe was cut; and in other ways the plaintiffs' easement in the water supply was interfered with, without right, by the defendants. As the plaintiffs according to the averments of the bill are the owners in fee of the premises to which the easement is appurtenant, and there was a substantial interference with their rights, they are entitled to the protection of a court of equity, even if not in actual possession of the premises at the time the trespass was committed. It is not essential to allege that the plaintiffs suffered damage by the acts of the defendants. The plaintiffs' right was invaded. In such a case "no special damage, no actual pecuniary loss need be stated or proved; the law presumes that a party sustains some damage from the infringement of his right, and enables him to maintain an action, whether he have suffered actual damage or not." *Atkins* v. *Bordman*, 2 Met. 457, 469.

In the deed from Warner to Willis M. Wellington, dated December 22, 1880, the water rights are conveyed subject to the

reservations contained in the original grant for the aqueduct. The defendants object to the master's finding that the right was appurtenant to the Wellington land, unless he found that "any right to the water that might be appurtenant to the Wellington premises was subject to all the reservations mentioned in the original agreement."

It was found that Olney conveyed the Campbell farm February 15, 1825, to Town and Sigourney with the water rights, reserving to Witt and Davis their rights and privileges in the same; that while Town and Sigourney were the owners of the estate they joined with Witt and Davis in conveying to Sibley and Barton certain rights in the water supply; that Witt and Davis, who were parties to the original agreement, by joining in the conveyance to Sibley and Barton recognized the right of Olney to transfer his rights in the aqueduct to Town and Sigourney; that all subsequent deeds referred to this right or privilege belonging to the parties to the original grant; that none of the parties ever dissented from the various conveyances, and that the restriction prohibiting the sale or disposal of water "but by the consent of all three of said proprietors" was waived by mutual consent. Without intimating that the several owners of the land would be denied relief in equity against a trespasser who without right injured the water supply, notwithstanding the particular restriction in the original agreement limiting the right to dispose of the water, we see no error in the finding of the master. See, in this connection, *Dennis* v. *Wilson*, 107 Mass. 591; *Willets* v. *Langhaar*, 212 Mass. 573, 575. By his conveyance to Town and Sigourney, Olney assigned all his right, title and interest in the farm and the easement annexed to it, subject only to the right of the other proprietors. He no longer had any right or title in the same, and the other proprietors by joining in the sale to Sibley and Barton recognized the Olney grantees as part owners of the aqueduct. While all the deeds are shown, all the evidence is not reported, and this finding of the master cannot be disturbed. On the evidence appearing in the record he was amply justified in finding, as he did, that the original restriction was waived. The exceptions based on the defendants' first five objections were therefore overruled properly.

The sixth exception is not argued and we treat it as waived.

The final decree ordered Carroll H. Rawson to replace the pipe and to restore it to the same condition as at the time of the trespass, and that the defendants Charles I. Rawson and Carroll H. Rawson be perpetually enjoined from interfering with the plaintiffs' rights set out in the bill. On the facts found and stated by the master in his report, this final decree was proper. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42.

The interlocutory decree overruling the exceptions to the master's report, and the final decree, are affirmed with costs.

*So ordered.*